MICHAEL A. ISAACS (Bar No. 99782)
michael.isaacs@dentons.com
DENTONS US LLP
One Market Plaza, Suite 2400
San Francisco, CA 94105
Telephone:    (415) 267-4000
Facsimile:    (415) 267-4198

SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA  90017-5704
Telephone:    (213) 623 9300
Facsimile:    (213) 623 9924

GARY W. MARSH (admission *pro hac vice* pending)
gary.marsh@dentons.com
DAVID GORDON (admission *pro hac vice* pending)
david.gordon@dentons.com
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone:    (404) 527 4000
Facsimile:    (404) 527 4198

Attorneys for Debtor
WEST CONTRA COSTA HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>WEST CONTRA COSTA HEALTHCARE DISTRICT.<br><br>                    Debtor.<br><br>Tax ID: 94-6003145 | Case No. 16-42917<br><br>Chapter 9<br><br>STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. § 109(C); DECLARATION OF KATHY D. WHITE IN SUPPORT THEREOF |

West Contra Costa Healthcare District, a California Local Health Care District (the "District"), hereby certifies its qualifications to be a debtor under Section 109(c) of the Bankruptcy Code, as follows:

1.   The District is a "municipality" as defined in 11 U.S.C. § 101(40).  As a Local Health Care District, the District is a "local public entity" as defined in CAL. GOV. CODE § 53760.1(f).

2.   The District is specifically authorized in its capacity as a municipality and local

public entity to be a debtor in a case under Chapter 9 of the Bankruptcy Code by the laws of the State of California. See CAL. GOV. CODE § 53760. Furthermore, the Board of Directors of the District has voted and approved a resolution to authorize the commencement and prosecution of this case.

3. The District is "insolvent" within the meaning of 11 U.S.C. § 101(32)(C).

4. The District desires to effect a plan to adjust its debts.

5. The District has been unable, prior to commencing this Chapter 9 case, to negotiate with creditors to reach an agreement with the holders of at least a majority in amount of each class to be impaired under a plan of adjustment because such negotiation is impracticable given that the District's creditors are numerous and diverse. The District further reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under Section 547 of the Bankruptcy Code.

Dated: October 20, 2016
DENTONS US LLP

By: /s/ Samuel R. Maizel
Samuel R. Maizel
Attorneys for Debtor

**Declaration of Kathy D. White**

I, Kathy D. White, declare:

1. I am the Chief Executive Officer of the West Contra Costa Healthcare District (the "District"). I make this Declaration in that capacity and, if called upon to do so, would testify of my own knowledge to the facts set forth herein.

2. I submit this Declaration in support of the *Statement of Qualifications Under 11 U.S.C. § 109(c)* filed by the District contemporaneously herewith.

3. The District filed this Chapter 9 case in order to obtain relief from creditor collection actions and access to certain revenues needed to operate to provide the District with time to effect a Plan of Adjustment of the District's debts. The District intends to use this Chapter 9 case to effect a Plan of Adjustment so that the District can satisfy, to the extent possible, its obligations to creditors and potentially expand operations aimed at enhancing the health, safety, and welfare of the citizens of the District.

4. The District is a special health care district created in accordance with California's Local Health Care District Law. Historically, the District has operated a hospital located in San Pablo known as Doctor's Medical Center (the "Hospital") and provided other healthcare-related services to the community. Until 1997, the District operated the Hospital as an independent acute care facility with modest *ad valorem* property tax support. By the mid-1990's, however, the Hospital began experiencing financial challenges, and the District realized that to save the Hospital it needed a capital partner to make necessary investments and to support the financial losses from operations. In January 1997, the District developed a strategic partnership with Tenet, a national, for-profit hospital company. Under this partnership the District retained ownership of the Hospital facilities while Tenet operated all healthcare services and made necessary capital investments.

5. Due to continuing financial losses at the Hospital, Tenet returned operation of the Hospital to the District in 2004. With the Hospital running out of cash and closure of the Hospital imminent, the District introduced a special parcel tax measure (Measure D) to supplement the existing *ad valorem* property tax, which measure was approved by 84% of voting residents in June

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

2004. Immediately thereafter the District used the future proceeds from that new parcel tax to secure $26 million in long-term municipal bond financing (the "<u>2004 Bonds</u>"). The proceeds of the 2004 Bonds were used to provide general working capital to the District and to cover continuing losses at the Hospital.

6. Despite the issuance of the 2004 Bonds, the District continued to struggle. The Hospital posted a $22.9 million operating loss in 2005, which loss consumed almost all of the cash reserve created by the 2004 Bonds. Facing a projected deficit of $35 million by the end of 2006, the District filed for bankruptcy and borrowed an additional $20 million from the Contra Costa County (the "<u>County</u>") on an unsecured basis in October 2006. During the pendency of the bankruptcy case the District developed and implemented a plan to achieve more than $17 million in expense reductions and performance improvements. The District secured additional outside funding and emerged from bankruptcy in 2008.

7. By 2011, the outside funding secured during the bankruptcy case was reduced by 93% and the District again faced a significant financial shortfall. The District again worked to cut expenses and proposed a new, additional parcel tax (Measure J) that was approved by the voters by a vote of 74%. The District used the future proceeds from this new new parcel tax to secure an additional $35 million in long-term municipal bond financing (the "<u>2011 Bonds</u>"). The proceeds of the 2011 Bonds were used to refinance a portion of the 2004 Bonds and to fund general operating expenses of the District.

8. Unfortunately, the revenues obtained by the District through the 2011 Bonds have now been almost completely exhausted. With the Hospital continuing to lose money and the District unable to secure additional financing, in April 2015 the District made the difficult decision to shut down operations at the Hospital. The Hospital property is now protected and maintained by a skeleton crew but is no longer actively in operation. Moreover, as a result of the closure of the Hospital, the holders of the 2004 Bonds and 2011 Bonds have accelerated the bond indebtedness such that **all** of the parcel tax revenue collected by the County on behalf of the District, approximately $5.5 million per year, now goes directly to the bondholders to prepay the District's obligations under the bonds. The acceleration of the bond indebtedness has resulted in

the District being left with no funds to continue operations or pay creditors.

9. The District is insolvent. The District's only remaining material assets are the Hospital, future *ad valorem* taxes in approximate amount of $4 million per year, future parcel tax revenues in the approximate amount of $5.5 million per year, $3,619,160.82 on deposit with U.S. Bank as Trustee for holders of the bonds, various prepayments and deposits totaling approximately $1.15 million, and $605,401 in Medi-Cal receivables. With the exception of $1 million in *ad valorem* taxes per year, all *ad valorem* taxes that were previously retained by the District are currently being paid over to the County in order to repay debts owed by the District to the County in connection with the District's prior bankruptcy case. Moreover, while the parcel taxes generally generate approximately $5.5 million per year, approximately $2.5 million of which was historically retained by the District annually to fund operations, the District is now unable to access any of the parcel tax revenue because the bondholders have accelerated the bond indebtedness and are using all of the District's parcel tax revenues to pre-pay that indebtedness.

10. The District owes approximately $57 million to the bondholders, $14.4 million to the County, and $2.2 million to general trade creditors. The District also has over $4.4 million in potential workers compensation and other litigation liability. The District owes the California Employment Development Department (the "EDD") approximately $1.6 million and may owe in excess of $1.9 million to the Centers for Medicare & Medicaid Services for alleged overpayment liability. Finally, the District has ongoing and long term pension obligations that may exceed $20 million.

11. The District intends to use this Chapter 9 case to effect a Plan of Adjustment so that the District can satisfy, to the extent possible, its obligations to creditors and potentially expand operations aimed at enhancing the health, safety, and welfare of the citizens of the District or otherwise provide for the future of the District. The District plans to sell the Hospital, which is largely unencumbered, and to utilize applicable provisions of the Bankruptcy Code to obtain access to sufficient funds to allow the District to fund its operations through a sale of the Hospital and confirmation of a Plan of Adjustment. In the long term, after satisfying its obligations under a Plan of Adjustment, the District could expand operations aimed at enhancing the health, safety,

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

and welfare of the citizens of the District or otherwise provide for the future direction of the District, and its Plan of Adjustment will so provide.

12. With respect to the District's qualifications to be a Chapter 9 debtor, the District is a "municipality" as defined in Section 101(40) of the Bankruptcy Code. The District is a special health care district created pursuant to California's Local Health Care District Law.

13. The District is specifically authorized by California law to be a Chapter 9 debtor. CAL GOV. CODE § 53760 provides that any "local public entity" may file a petition under Chapter 9 of the Bankruptcy Code. The term "local public entity" includes "districts" such as the District. See CAL GOV. CODE § 53760.1(g).

14. As set forth in Paragraphs 9 and 10 above, the District is clearly insolvent. The District is not paying its debts as they come due. Moreover, the District is unable to pay its future debts and, absent relief resulting from the filing of this Chapter 9 case, will soon run out of cash.

15. The District desires to effect a Plan of Adjustment. As stated above, the District filed this Chapter 9 case to obtain relief from creditor collection actions and access to certain revenues needed in order to provide the District with time to effect a Plan of Adjustment of the District's debts. The District intends to use this Chapter 9 case to effect a Plan of Adjustment so that the District can satisfy, to the extent possible, its obligations to creditors and potentially expand operations aimed at enhancing the health, safety, and welfare of the citizens of the District or otherwise provide for the future direction of the District.

16. The District has been unable to negotiate with its creditors regarding a Plan of Adjustment because such negotiations are impracticable given the number of the District's creditors, their divergent interests, and the need to file for Chapter 9 relief quickly given the District's deteriorating cash position. The District has over 1,400 creditors holding more than $95 million in claims. These creditors have varying interests - some are bondholders, others are former employees and retirees, others are political subdivisions or state or federal agencies, still others may be unknown. The number of the District's creditors and their diverging interest make negotiation regarding a Plan of Adjustment impracticable. Moreover, while the District hopes to sell the Hospital through this Chapter 9 case, and while such a sale could provide funds necessary

to propose a Plan of Adjustment, the outcome of the sale process is uncertain. The District cannot propose a Plan of Adjustment without knowing the outcome of the sale process and therefore cannot engage in negotiations with creditors regarding a Plan of Adjustment.

17. The District urgently needs Chapter 9 relief given its cash position. The District is running out of cash and will soon be unable to fund its remaining operations absent Chapter 9 relief. Given the exigent circumstances, engaging in protracted, multiparty creditor negotiations is impracticable. Moreover, one of the District's large creditors, the EDD, has the ability to sweep the District's bank accounts in order to recover sums owed to it. The District has legitimate and reasonable concern that, absent Chapter 9 relief, the EDD may attempt to obtain an avoidable transfer.

[SIGNATURE PAGE FOLLOWS]

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct and that this declaration was executed at Albuquerque, New Mexico on October 20, 2016.

By: _____
Kathy D. White
Chief Executive Officer
West Contra Costa Healthcare District